## ALAMO CONSTRUCTION CO., Inc. v. UNITED STATES.

### No. 46888.

United States Court of Claims.

March 6, 1950.

J. Roy Thompson, Jr., Washington, D. C., for the plaintiff.

M. Walton Hendry and Bernard J. Gallagher, Washington, D. C., were on the brief.

Carl Eardley, Washington, D. C., with whom was Assistant Attorney General H. G. Morison, for the defendant.

Before JONES, Chief Judge, and WHITAKER, HOWELL, MADDEN and LITTLETON, Judges.

WHITAKER, Judge.

Plaintiff entered into a contract with the defendant for the construction of certain housing units in Eagle Pass, Texas. It sues for damages for delay due to two causes, delay in securing lumber and defendant's delay in furnishing certain equipment, such as kitchen sinks, lavatories, heaters, refrigerators, etc.

It was a wartime contract. One provision of it was that if the materials necessary could not be secured by plaintiff under the

priority rating assigned the project the contracting officer would seek to secure a higher priority.

The units were frame dwellings. Lumber was scarce. At the time the contract was entered into all housing projects had been given an AA-4 rating by the War Production Board, and the invitation for bids on this project notified bidders of this fact. However, at just about the time this contract was entered into the War Production Board, at the urgent solicitation of the Federal Public Housing Authority, had granted an AA-3 rating to public housing projects. Such a rating was made applicable to plaintiff's project.

Even so, plaintiff was unable to secure lumber as needed and was forced to buy more expensive lumber to get the job done. It says the defendant is liable for this because the contracting officer did not make an effort to secure an even higher priority.

The contracting officer admits he did not try to do so, but, nevertheless, plaintiff is not entitled to recover.

Plaintiff's contract called for the construction of 244 dwelling units. During the contract year 300,000 such units were constructed by the Federal Public Housing Authority under this AA-3 rating, more than a thousand times the number plaintiff was constructing. The War Production Board issued priorities not to individual housing projects but to such projects as a whole. There was nothing out of the ordinary about plaintiff's project. It would have been as futile for the contracting officer on this project to have applied for a priority for it higher than that given other public housing projects as for a child on the seashore to try to hold back the oncoming waves with his little sand shovel.

■ Plaintiff got a higher priority than it had been promised. It would have been completely futile for the contracting officer to have asked for more. In such case the contracting officer is to be excused for not having done so, and the defendant is not liable for his not having done so.

Plaintiff's other claim is for delay in furnishing the so-called "mass equipment" for the houses, which the defendant agreed to furnish.

Defendant says its tardiness in this respect did not delay plaintiff in completing the job. The contracting officer so found and on appeal his decision was affirmed by the head of the department.

The Commissioner of this Court has found that plaintiff did not commence the installation of the "mass equipment" until August 1943; but about half of it had been furnished by the defendant before the first of July. In May there were furnished all the undersink cabinets, all the kitchen sinks, all the shower stalls, all the sets of lavatory trim, and all but one of the laundry trays. Ninety space heaters were furnished in May and the balance on June 2.

In June all the gas ranges were furnished, all the lavatories, all the sets of sink and tray trim, all the water closet tanks, all but three of the water closet bowls, and 124 of the 244 ice refrigerators.

The only item about which there was a delay beyond the first of August was the water-closet seats, which were furnished on September 4. Twenty-two of the total of 3,660 other items were either defective or short, but these were supplied in August or September.

Since the contractor did not commence the installation of this equipment until August, although much of it was available earlier, it would seem the defendant's tardiness did not delay final completion of the job.

The whole record substantiates this. The delay in completion was the result of plaintiff's inability to get lumber and its inability to get sufficient labor. Had plaintiff been able to get its required lumber and the necessary labor at an earlier date, it would have been ready for this "mass equipment" before it was furnished, but it was not able to do so.

■ The record convinces us that the contracting officer and the head of the department were right in saying that defendant's tardiness in furnishing the mass equipment did not delay the final completion of the job. Even if it had been furnished on

the day requested, the job could not have been finished earlier.

Plaintiff's petition will be dismissed.

HOWELL, MADDEN, and LITTLETON, JJ., and JONES, C. J., concur.